IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JONATHAN S. EAGLE,

          Plaintiff,

v.                                      Civil Action No.
                                                    8:13-CV-636 (DEP)

CAROLYN COLVIN, Commissioner of
Social Security,

          Defendant.

---

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER LAW FIRM           MARK SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN     MONIKA K. CRAWFORD, ESQ.
United States Attorney for the      Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

<s>1</s>

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on July 10, 2014, during a telephone conference held on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003. Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, with a directed finding of disability and for the sole purpose of calculating benefits owing to the plaintiff for the period prior to February 8, 2011, and without a directed finding of disability and for further proceedings consistent with the court's determination for the period from February 8, 2011 to November 15, 2011, date of the Commissioner's determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: July 17, 2014
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
JONATHAN EAGLE,

                        Plaintiff,

vs.                                 13-CV-636

CAROLYN COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

-------------------------------------------x
```

*Decision* rendered on July 10, 2014

James Hanley Federal Building, Syracuse, New York,

HONORABLE DAVID E. PEEBLES, United States

Magistrate-Judge, Presiding.

A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | MARK A. SCHNEIDER<br>Attorney at Law<br>57 Court Street<br>Plattsburgh, New York 12901 |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY:  MONIKA CRAWFORD, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE COURT:  Thank you.  I'll have to let that be
2    the last word.
3       I have a request under 42, United States Code, Section
4    405(g) for a judicial review of an adverse determination of
5    the Commissioner.
6       The plaintiff in this case was born in February of 1993.
7    Turned 18 in February 2011.  At the time of the hearing in
8    this matter, he was in eleventh grade in special education
9    classes.  He has an Individualized Educational Program, or
10   IEP, that has classified him as learning disabled.  The IEP
11   appears at 273 of the Administrative Transcript.
12      He has been placed in a structured environment with an
13   8:1:1 ratio, meaning for every eight students there is one
14   teacher and one aide present.  That is at 168.
15      He lives with his paternal grandmother.  He's never
16   worked.  He has had significant mental health treatment and a
17   variety of diagnoses over time.  His treatment has included
18   inpatient treatment at Four Winds Psychiatric Hospital
19   between December of 2006 and January 2007, where he was
20   placed due to threats and suicidal thoughts.  That appears at
21   pages 671 and 672 of the Administrative Transcript.  He was
22   also placed in a residential setting at Mountain Lake
23   Children's Residence for troubled children between April of
24   2007 and June of 2009.  He was discharged after setting fire
25   to his room in May of 2009.

1     He has received services at the Behavior Health Services
2  North since 2009.  He has been attending approximately one
3  time per week.  There are various diagnoses in the record,
4  including attention deficit and hyperactivity disorder,
5  learning disability, conduct disorder, bipolar disorder.  He
6  takes Adderall, Abilify and Prozac.
7     He has had, as the counsel for the plaintiff indicated,
8  many subpar, extremely subpar GAF assessments.  In February
9  of 2010 by a Nurse Practitioner Phillips at 40.  That's at
10  page 559 to 561.  In June of 2011 Nurse Practitioner Mills
11  assessed him at 40 GAF, at 672 of the record.  The Behavioral
12  Center discharge summary in February of 2011 assessed him at
13  a 35.  That's at page 650 to 651.  Adult intake assessed him
14  at a 48 in April of 2011.  That's at page 648.
15     He has a history of fecal and urinary soiling.  Although
16  the urinary soiling may have resolved, the evidence at least
17  suggests that the fecal soiling continues and it is
18  significant.  He has engaged in several criminal and
19  quasi-criminal acts and has been jailed for destruction of
20  property.  He has also threatened his grandmother with a
21  knife.  He was charged with trying to choke a student on a
22  school bus, and with arson.  He was consultatively examined
23  in May of 2011 by Dr. Brett Hartman.  His report is in the
24  record at 657, 658.
25     Procedurally, the plaintiff applied for Supplemental

1  Security Income, or SSI, benefits in March of 2010.  A
2  hearing was conducted beginning in April of 2011 and
3  continued to October 3, 2011 by Administrative Law Judge
4  Robert Wright.  The Administrative Law Judge issued a
5  decision on November 15, 2011, finding no disability either
6  during the period when the childhood standard would apply and
7  under the adult five-step test.  Social Security
8  Administration Appeals Council denied review on May 2, 2013,
9  making the Commissioner's decision a final determination of
10 the agency.
11      Applying the childhood test, as indicated previously,
12 the Administrative Law Judge went through the three-step
13 test.  In the functional equivalence analysis found a marked
14 limitation in caring for oneself and less than marked in
15 acquiring and using information, attending and completing
16 tasks, interacting and relating with others, and no
17 limitation in the domains of moving about and manipulating
18 objects and health and physical well being.  And therefore
19 concluded no disability prior to age 18.
20      At 18 and forward the Commissioner applied the five-step
21 test.  Determined that based on the record that the plaintiff
22 had the residual functional capacity of performing work at
23 all exertional levels with non-exertional limitations
24 specified at page 29 of the Administrative Transcript,
25 relying heavily upon Dr. Hartman's consultative report and

1 Nurse Practitioner Mills source statement, and found no
2 disability.
3     The scope of review of this Court is extremely
4 deferential.  My review is limited to determining whether
5 properly the principles were applied and substantial evidence
6 supports the Commissioner's determination.  Substantial
7 evidence has been defined as such relevant evidence as a
8 reasonable mind might accept as adequate to support a
9 conclusion.  As counsel correctly pointed out, there must be
10 more than a mere scintilla of evidence scattered throughout
11 the Administrative Record.  Rather, the Court must review the
12 record as a whole in order to weigh substantiality.
13     As I indicated, there are obviously two separate periods
14 involved in two separate tests at play.  In the childhood
15 determination, once steps one and two are passed and there is
16 no medical equivalence of any of the listed determinations,
17 then the Commissioner determines whether there is functional
18 equivalence, examining six relevant domains as I just
19 previously recited for functional equivalence.
20     If there is a finding of an extreme limitation in one
21 domain, then there is functional equivalence and a finding of
22 disability is supported.  If there is marked limitations in
23 two or more of the list of domains, there is functional
24 equivalence.  Extreme limitation is defined by the
25 regulations as interfering very seriously with the claimant's

1  ability to independently initiate, sustain or complete
2  activities.  Marked limitation exists when an impairment
3  interferes seriously with the claimant's ability to
4  independently initiate, sustain or complete activities.
5      In my view the Commissioner's determination concerning
6  the domain of interacting and relating with others as being
7  less than marked is not supported by substantial evidence.
8  In my view the substantial evidence supports at least a
9  marked limitation in this area, if not an extreme limitation.
10     The record reflects and the IEP from the plaintiff's
11 school reflects that he has significant outbursts and they
12 can become physical.  That's at page 343 and 321 of the
13 record.  Nurse Abar considers the plaintiff to have various
14 serious limitations in at least some of the areas, sub-areas
15 of this domain.  That's at page 217.
16     According to the school records, the plaintiff has a
17 special timeout room that he uses when he needs to
18 decompress.  He has a large number of in-school suspensions.
19 He testified to 25.  He has all younger friends, which under
20 the regulations is one indicia of a limitation in this area.
21 He has made threats to his grandmother.  He has assaulted
22 others.  He has engaged in self-injurious behavior, including
23 cutting.
24     I'm on to the next domain.  I believe the record also
25 reflects that he has a marked disability in caring for

himself, as the Commissioner found, and I find that to be supported. He engages in self-injurious behavior. Nurse Abar believes he has a serious problem in this area. That's at page 219. He soils himself regularly, as indicated by Dr. Hedden at pages 562 to 565. Dr. Patnode at 474. Nurse Practitioner Phillips at 608.

I think it could be argued that he also has a marked limitation in the area of acquiring and using information given his significant learning impairment that is even recognized by Dr. Hartman at page 658. He is classified as learning disabled and he has ADHD. He is in a very structured environment; 8:1:1. Nurse Abar supports a finding of significant limitation in this domain at page 215. And the Commissioner really, including Jerry Ross at 193 to 197, really did not take fully into account that plaintiff was operating in a structured environment, which would not be the case in a workplace.

Clearly the plaintiff has anger issues. Nurse Practitioner Mills on July 27, 2010 points out that he went to the ER, he punched the door, doesn't want to live. That's at page 589. Nurse Practitioner Dove also noted anger issues at page 601. There was the bus choking incident which occurred in November of 2010 when he tried to choke another student and the police had to be called. That's at pages 357 to 358.

In my view if he does not have an extreme limitation in interacting and relating to others, it is clearly marked, and when that is added to the ALJ's finding that he has a marked limitation in caring for himself, a finding of disability is warranted prior to turning 18. And I agree with plaintiff's counsel that there is compelling evidence of disability. As the Commissioner notes, if there is such overwhelming and compelling evidence, then remand for further consideration is not warranted. Where persuasive proof of disability in the record and further development of the record would serve no useful purpose, the matter should be remanded with a directed finding of disability for a calculation of benefits.

That's what I intend to do with regard to the childhood period. I have a different analysis with regard to the adult disability. It's clear to me that the Commissioner should have, but did not, engage in much analysis with regard to whether or not plaintiff meets the listed presumptively disabling conditions set out in the Commissioner's Regulations, including 12.04. I think that that should be explored on remand.

It's clear to me that the RFC determination, on which the vocational expert's opinion giving rise to the finding of no disability hinges, is flawed. It did not take into consideration plaintiff's soiling. It did not take into consideration his significant inability to be around and work

1  with others and interact with others.  And it failed to take
2  into consideration or at least discuss his extremely low GAF
3  scores.
4      While I agree with the Commissioner's Council that that
5  alone does not translate and correlate directly to workplace
6  limitations, it's a factor that should be discussed in a
7  Commissioner's decision so that the Court can meaningfully
8  make judicial review, and know that those GAF scores were at
9  least taken into consideration.
10     So I also find that the credibility analysis is flawed,
11 and that the Commissioner did not adequately discuss why the
12 plaintiff's testimony, which is fully consistent as far as I
13 can see with the records in the evidence, was discounted.
14 But I am unable to say that there is persuasive proof of
15 disability.  I think that a more full and robust analysis is
16 needed for the adult period of disability.  So with regard to
17 that period I will remand without a directed finding of
18 disability for further consideration by the agency.
19     I will, therefore, grant judgment on the pleadings to
20 the plaintiff, accordingly.  And you'll have a decision
21 within the next day or two incorporating by reference my
22 verbal decision.
23     Thank you both for excellent presentations.  Interesting
24 case.
25          MR. SCHNEIDER:  Thank you, Your Honor.

1  MS. CRAWFORD: Thank you, Your Honor.
2  THE COURT: Thank you.
3              *             *             *

7              C E R T I F I C A T I O N

9  I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
10 Realtime Court Reporter, in and for the United States
11 District Court for the Northern District of New York,
12 do hereby certify that pursuant to Section 753, Title 28,
13 United States Code, that the foregoing is a true and correct
14 transcript of the stenographically reported proceedings held
15 in the above-entitled matter and that the transcript page
16 format is in conformance with the regulations of the
17 Judicial Conference of the United States.

21              _____
22              EILEEN MCDONOUGH, RPR, CRR
                Federal Official Court Reporter